IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

BEVERLY TAYLOR,

    Plaintiff,

vs.                                                 Civ. No. 98-496 JC/WWD

UNITED MANAGEMENT, INC. d/b/a
WESTSIDE CHRYSLER PLYMOUTH JEEP-EAGLE-LM,

    Defendant.

## MEMORANDUM OPINION AND ORDER

This matter comes before the Court upon the Plaintiff's Motion for Summary Judgment [Doc.# 58] and the Defendant's Motion for Summary Judgment [Doc.#63], both filed on May 11, 1999. This case was filed as a result of an automobile lease the Plaintiff entered into with the Defendant. The Plaintiff alleges violations of the federal Consumer Leasing Act (CLA), 15 U.S.C. §§1667-1667f, as well as the New Mexico Unfair Trade Practices Act (UPA), 1978 N.M.S.A. §§57-12-1 to 57-12-22. She seeks statutory damages, actual damages, treble damages, reasonable attorney's fees, and costs.

A. Background

In December 1996, the Plaintiff signed a closed-end lease with the Defendant for a new car. At the same time, the Plaintiff signed a document titled "Vehicle Purchase/Transfer" in which the Plaintiff's 1982 Corvette is described as having under 63,000 miles and the cost is stated at $4,000.00. The Plaintiff intended to trade in her Corvette as part of the lease agreement. There is evidence that the trade-in value of the Corvette was about $7,000.00 although the Defendant's

1

general manager, Brad Francis, found only quotes of $4,000.00.

The lease agreement states that a cash payment of $3,299.00 was made. The lease, although not specifically, credited the Plaintiff with $325.46 (first monthly lease payment including sales/use taxes payable monthly), $47.50 (first year's license/registration fees), $183.51 (tax on depreciation credit), and $145.00 (document fee). The cash payment amount plus the above credits amounted to $4000.48. The lease also showed that a net trade-in allowance was "N/A," not applicable. In addition, the lease noted an estimated sales/use tax during the lease term of $834.51. The Consumer Lease Information document the Plaintiff signed indicates a cash payment of $3,299 which was deducted from the cost of the vehicle. The Plaintiff also bought a "finishing touch package."[1]

The Plaintiff alleges that she used her Corvette as a "trade-in." Consequently, the lease information and other documents referring to a cash payment are allegedly inaccurate and misleading. The Plaintiff also alleges that her Corvette should have been traded in at a value of at least $7,000.00, not $4,000.00. The Defendant argues that it is their custom to purchase a vehicle that is being traded in so the lease agreement and Consumer Lease Information document accurately reflect a cash payment instead of a net trade-in allowance. Also, the Defendant states that the going price for the Corvette was only $4,000.00.

---

[1]In her Complaint, the Plaintiff alleges that the Defendant told her she had to purchase the "finishing touch" package when in fact that package was an option. The Plaintiff does not raise this issue in her motion for summary judgment. I, therefore, assume that this issue has been waived.

B. Summary Judgment Standard

Summary judgment is appropriate if "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56( c). The Federal Rules of Civil Procedure provide that it is the movant's burden to demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U. S. 317, 321- 23 (1986). Once the movant has made such a showing, the adverse party "may not rest upon the mere allegations or denials of [their] pleading[ s], [they] must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). In reviewing a motion for summary judgment, "[t]he evidence must be viewed in the light most favorable to the nonmoving party, *Frandsen v. Westinghouse Corp.*, 46 F. 3d 975, 977 (10th Cir. 1995), even when it is produced by the moving party." *Buchanan v. Sherrill*, 51 F. 3d 227, 228 (10th Cir. 1995). "Summary judgment is only appropriate if 'there is [not] sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party.'" *Biester v. Midwest Health Servs., Inc.*, 77 F. 3d 1264, 1266 (10th Cir. 1996) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U. S. 242, 249 (1986)). "Thus, to defeat a summary judgment motion, the non-movant 'must do more than simply show that there is some metaphysical doubt as to the material facts.'" *Id.* (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U. S. 574, 585- 86 ( 1986)). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U. S. at 249- 50 (citations omitted).

C. The CLA Claim

The Plaintiff's CLA claim is based on two contentions: 1) the Defendant failed to disclose accurately the trade-in allowance, and 2) the Defendant failed to disclose accurately the total

sales/use taxes during the lease term.[2] The Truth-In-Lending Act (TILA) which encompasses the CLA, was passed "to assure a <u>meaningful disclosure</u> of credit terms so that the consumer will be able to compare more readily the various credit terms available to him and avoid the uninformed use of credit...." 15 U.S.C. §1601 (emphasis added). TILA is a remedial statute designed to protect borrowers who are viewed as not being on an equal footing with lenders. *Bizier v. Globe Fin. Serv., Inc.*, 654 F.2d 1, 3 (1st Cir. 1981). Consequently, TILA and CLA provisions are to be construed liberally in favor of borrowers. *Id. See also Gallegos v. Stokes*, 593 F.2d 372, 376 (10th Cir. 1979)(citing *Rachback v. Gogswell*, 547 F.2d 502, 505 (10th Cir. 1976)). Additionally, "[a] proven violation of the disclosure requirements is presumed to injure the borrower by frustrating the purpose of permitting consumers to compare various available credit terms." *Herrera v. First Northern Sav. and Loan Ass'n*, 805 F.2d 896, 901 (10th Cir. 1986)(citing *Dzadovsky v. Lyons Ford Sales, Inc.*, 593 F.2d 538, 539 (3d Cir. 1979)).

The CLA requires that "[e]ach lessor shall give a lessee prior to the consummation of the lease a dated written statement on which the lessor and the lessee are identified <u>setting out accurately and in a clear and conspicuous manner</u>...(2) [t]he amount of any payment by the lessee required at the inception of the lease; (3) [t]he amount paid or payable by the lessee for ... taxes...." 15 U.S.C. §1667a (emphasis added). "The clear and conspicuous standard requires that disclosures be reasonably understandable. For example, the disclosures must be presented in a

---

[2]The Plaintiff raises for the first time in her reply brief that under the CLA the Defendant should have itemized the gross capitalized cost. Because this gross capitalized cost claim was not raised in the Complaint or in her motion for summary judgment, I find that the claim is untimely and will not be heard at this time. *See Employers Mut. Cas. Co. v. Miner*, 6 F.Supp.2d 1232, 1236 n.5 (D. Kan. 1998)("court will not grant summary judgment based on an issue raised for the first time in a reply brief."); *State Farm Fire & Cas. Co. v. Mhoon*, 31 F.3d 979, 984 n. 7 (10th Cir.1994) (failure to raise issue in opening brief constitutes waiver).

4

way that does not obscure the relationship of the terms to each other...." Official Staff Commentary to Regulation M, 12 C.F.R. Pt. 213, Supp. I.[3] Regulation M, issued by the Board of Governors of the Federal Reserve System, implements the CLA. 12 C.F.R. §213.1(a)(1997). Regulation M states that "in motor-vehicle leases, [the lessor] shall itemize how the amount due will be paid, by type and amount, including any net trade-in allowance, rebates, noncash credits, and cash payments...." 12 C.F.R. §213.4 (b). The lessor shall also disclose the total amount for all taxes to be paid in connection with the lease. 12 C.F.R. §213.4 (n). These disclosures "may be made in the lease contract to be signed by the lessee."[4] 15 U.S.C. §1667a.

Arguably, there is a question of fact regarding whether a trade-in occurred or a sale of the Plaintiff's Corvette. I find, however, that a distinction between a trade-in and sale is not material in this case. If a trade-in indeed occurred, the lease and the Consumer Lease Information documents are not accurate because they do not indicate a trade-in. If a sale occurred, the lease and Consumer Lease Information documents are likewise inaccurate. The total cash amount from the sale is not listed on the documents. Rather, those documents indicate that only $3,299.00 was paid in cash. Although the Defendant credited the balance of the $4,000.00 towards other items, that action served to reduce the principle owed by the least amount possible. This, of course, kept the monthly payment as high as possible. Under both scenarios, a trade-in and sale, I find that the lease and Consumer Lease Information documents fail to meet the CLA's requirement

---

[3]The official staff commentaries to Regulation M are granted the force of law. *Ford Motor Credit Co. v. Milhollin*, 444 U.S. 555, 565 (1980).

[4]The Plaintiff attempts to make arguments for the first time in his motion for summary judgment regarding the form of the lease and how the form violates the CLA. Having reviewed the CLA and Regulation M, I find that these "form" arguments are without merit.

that the lease contain accurate and meaningful disclosures. Summary judgment should, therefore, be granted with respect to the CLA claim that the trade-in disclosure was not accurate.

The Plaintiff also complains that the tax disclosure is inaccurate. Upon examination of the lease, the $834.51 tax amount clearly and conspicuously includes the term of the lease (42 months) times the sales/use tax ($15.50) plus the tax on the depreciation credit ($183.51). *See* Line 5A of the lease: "([Item 2A X  3B] + 4F)"(attached to Complaint). After doing the arithmetic, the total tax amount equals $834.51. The $834.51 figure is therefore accurate. I find that summary judgment should be denied as to this CLA claim.

D. The UPA Claim

The Plaintiff alleges that the Defendant willfully violated the UPA by misrepresenting the lease as one involving a sale instead of a trade-in and giving the Plaintiff only $4,000.00 for her Corvette. The UPA prohibits "unfair or deceptive trade practices and unconscionable trade practices." 1978 N.M.S.A. §57-12-3. An "'unfair or deceptive trade practice' means any false or misleading oral or written statement, visual description or other representation of any kind knowingly made in connection with the sale, lease, rental or loan of goods or services [or] in the extension of credit or in the collection of debts by any person in the regular course of his trade or commerce, which may, tends to or does deceive or mislead any person...." 1978 N.M.S.A. §57-12-2(D). Such unfair or deceptive trade practices include "making false or misleading statements of fact concerning the price of goods or services, the prices of competitors or one's own price at a past or future time or the reasons for, existence of or amounts of price reduction" and "stating that a transaction involves rights, remedies or obligations that it does not involve." 1978 N.M.S.A. §57-12-2(D)(11) and (15). To establish a violation of the UPA's prohibition against

unfair or deceptive trade practices, the Plaintiff must show the following: "(1) Defendants made an oral or written statement that was false or misleading;  (2) the false or misleading statement was 'knowingly made in connection with the collection of a debt';  (3) the representation occurred in the regular course of the representor's trade or commerce;  and (4) the representation 'may, tends to, or does, deceive or mislead any person.'" *Russey v. Rankin*, 911 F.Supp.1449, 1449-60 (D.N.M. 1995) (quoting *Ashlock v. Sunwest Bank of Roswell, N.A.*, 107 N.M. 100, 101, 753 P.2d 346, 347 (1988) *overruled on other grounds, Gonzales v. Surgidev Corp.*, 120 N.M. 133, 899 P.2d 576 (1995)).  Intent is not an element of an unfair or deceptive trade practice claim. *Id.* at 1460 (citing *Stevenson v. Louis Dreyfus Corp.*, 112 N.M. 97, 100, 811 P.2d 1308, 1311 (1991)).  The misrepresentation need only be made knowingly.  "Knowingly made" means "a party was actually aware that the statement was false or misleading when made, or in the exercise of reasonable diligence should have been aware that the statement was false or misleading." *Id.* (citing *Stevenson*, 112 N.M. at 100, 811 P.2d at 1311).

An "'unconscionable trade practice' means any act or practice in connection with the sale, lease, rental or loan, or in connection with the offering for sale, lease, rental or loan, of any goods or services or in the extension of credit or in the collection of debts which to a person's detriment: (1) takes advantage of the lack of knowledge, ability, experience or capacity of a person to a grossly unfair degree; or (2) results in a gross disparity between the value received by a person and the price paid."  1978 N.M.S.A. §57-12-2(E).  Willful violations of the UPA warrant treble damages.  1978 N.M.S.A. §57-12-10.

With respect to the unfair or deceptive trade practices claim, it is undisputed that if the transaction at issue was in fact a trade-in, the lease and Consumer Lease Information documents

are false or misleading. Even if the transaction was a sale, the lease and Consumer Lease Information documents are at the very least misleading in that the cash payment is listed at $3,299.00 instead of $4,000.00, the alleged sale price. It is undisputed that the Defendant's false and misleading statements regarding the cash payment were knowingly made and the representation occurred in the regular course of the Defendant's business. I find that the Plaintiff has met the elements of the unfair and deceptive trade practices provision. I also find that it is undisputed that the Defendant's violation of that provision was willful. Summary judgment should be granted in the Plaintiff's favor on the issue of violation of the unfair or deceptive trade practices provision.

The Plaintiff further alleges a violation of the unconscionable trade practice provision based on the undisputed fact that the Defendant valued her Corvette at $4,000.00, instead of $7,000.00. The Plaintiff believes that there is a "gross disparity" between the value received by the Plaintiff of $4,000.00 and the $7,000.00 value. However, the UPA states that the gross disparity must exist between the value received and the "price paid." In this case, the price paid to the Defendant when it sold the Corvette was $4,600.00. It is undisputed that the $600.00 profit is not excessive. I, therefore, fail to find a gross disparity between the $4,000.00 and $4,600.00. Accordingly, summary judgment on the unconscionable trade practice provision should be granted in the Defendant's favor.

WHEREFORE,

IT IS ORDERED that the Plaintiff's Motion for Summary Judgment [Doc.# 58] is granted

in part to the extent that the trade-in disclosure was inaccurate and the Defendant engaged in unfair or deceptive trade practices.

IT IS FURTHER ORDERED that the Defendant's Motion for Summary Judgment [Doc.#63] is granted in part to the extent that the total tax disclosure was accurate and the Defendant did not engage in unconscionable trade practices.

IT IS FURTHER ORDERED that this matter shall proceed to trial on the issue of damages.

_____
CHIEF UNITED STATES DISTRICT JUDGE

Counsel for Plaintiff: Richard N. Feferman, Esq.
Counsel for Defendant: Mark Jarmie, Esq.